UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

____

EDWARD JAMES CROMER,

         Petitioner,                Case No. 2:21-cv-205

v.                                  Honorable Maarten Vermaat

ERICA HUSS,

         Respondent.
_____/

**OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed. Some of Petitioner's claims have already been decided against him. Those claims are second or successive and require permission from the Sixth Circuit Court of Appeals before they may be raised in this Court. The remainder of Petitioner's claims fail to raise a meritorious federal claim that is cognizable on habeas review.

**Discussion**

**I.    Factual allegations**

Petitioner Edward James Cromer is incarcerated with the Michigan Department of Corrections at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. Following a jury trial in the Wayne County Circuit Court, Petitioner was convicted on three counts for offenses that occurred on February 3, 1990: (1) armed robbery, in violation of Mich. Comp. Laws § 750.529; (2) second-degree murder, in violation of Mich. Comp. Laws § 750.317; and (3) felony firearm, in violation of Mich. Comp. Laws § 750.227b.  On August 30, 1990, the court sentenced Petitioner to prison terms of (1) life on the armed robbery charge; (2) life on the second-degree murder charge; and (3) two years on the felony firearm charge.

Petitioner attacked these convictions by way of a habeas petition filed almost twenty years ago. *Cromer v. Gundy*, No. 1:01-cv-762 (W.D. Mich.).  By opinion and judgment entered December 17, 2001, the Court dismissed the petition because it was barred by the statute of limitations.  Petitioner filed a notice of appeal, but the Sixth Circuit Court of Appeals denied a certificate of appealability.  Petitioner thereafter sought relief from the judgment almost 15 years after it was entered.  The Court transferred the motion to the Sixth Circuit Court of Appeals as a second or successive petition.  The Sixth Circuit denied Petitioner's motion for leave to file the second or successive petition.

Petitioner filed another habeas petition attacking his murder/armed robbery/felony firearm convictions during May of 2013. *Cromer v. Napel*, No. 2:13-cv-175 (W.D. Mich.).  The court transferred the petition to the Sixth Circuit Court of Appeals as second or successive and, thus, requiring permission from the Sixth Circuit before Petitioner could file it in this Court.  The Sixth Circuit denied leave to proceed on the second or successive petition.

Petitioner filed another habeas petition attacking his murder/armed robbery/felony firearm convictions during October of 2019. *Cromer v. Davids*, No. 1:19-cv-848 (W.D. Mich.). The Court transferred the petition to the Sixth Circuit Court of Appeals as second or successive. The Sixth Circuit denied leave to file the petition.

Separately, Petitioner pleaded guilty and was convicted of attempting to receive stolen property, in violation of Mich. Comp. Laws § 750.535. This offense occurred on July 14, 1986. On September 25, 1990, the court sentenced Petitioner to a term of 1 year to 2 years, 6 months, to be served consecutively to Petitioner's existing sentences. It does not appear that Petitioner has ever specifically attacked this conviction or sentence. Nonetheless, Petitioner filed a habeas corpus petition that attacked his incarceration generally. *Cromer v. United States et al.*, No. 2:13-cv-59 (W.D. Mich.). That attack, if valid, would necessarily have called into question the convictions in both prior criminal proceedings. The Court dismissed the petition as untimely.

Petitioner has also attacked by habeas corpus petition the Michigan Parole Board's denial of parole—or at least denial of a parole hearing. *Cromer v. United States et al.*, No. 2:12-cv-324 (W.D. Mich.). The Court denied relief by order entered November 2, 2012.

Petitioner has also attacked by habeas corpus petition prison disciplinary proceeding convictions. *Cromer v. Davids*, No. 1:19-cv-1099 (W.D. Mich.). The Court, giving Petitioner the benefit of every possible doubt, concluded that because Petitioner's consecutive sentence offense was committed before April 1, 1987, it could be that the disciplinary proceedings might result in the loss of good time such that the finding of guilt could impact the duration of Petitioner's sentence. For that reason, the Court considered whether Petitioner was afforded the limited due process protections required for a disciplinary proceeding with that impact. The Court concluded that Petitioner had been afforded all the process he was due and denied the petition.

Finally, Petitioner has invoked the Court's admiralty and maritime jurisdiction to attack his conviction(s). *Cromer v. Snyder et al.*, No. 1:17-cv-94 (W.D. Mich.). The Court dismissed that complaint for failure to state a claim.

On September 8, 2021, Petitioner filed this habeas corpus petition. Petitioner's presentation of the issues is far from clear, which is typical in the actions Petitioner files. *See, e.g., Cromer v. Snyder et al.,* No. 1:17-cv-94 (W.D. Mich.) (Op., ECF No. 9, PageID.122) ("It is difficult to pin down precisely what sort of action Plaintiff intends to bring because his complaint is nothing more than unintelligible legalistic gobbledygook."), *aff'd.* (Order, ECF No. 23). Nonetheless, based on Petitioner's scattered and cryptic petition and attachments, the Court concludes that Petitioner again challenges the constitutionality of his convictions and sentences, prison disciplinary proceedings from 2021, his placement in the START program—which is apparently based on the MDOC's determination that Petitioner suffers from mental illness, and a May 5, 2021, action by the Michigan Parole Board, which apparently denied Petitioner parole or a parole hearing. (Pet., ECF No. 1, PageID.13, 18–25.) Moreover, Petitioner again looks to the rights and remedies of admiralty and maritime law, despite this Court's and the Sixth Circuit's earlier determination that "[c]ontrary to Cromer's assertions, he is not a vessel . . . and nothing in his criminal proceedings pertained to maritime commerce." *Cromer v. Snyder et al.*, No. 1:17-cv-94 (W.D. Mich.) (6th Cir. Order, ECF No. 23, PageID.225.)

## II. AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to,

4

or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being

5

presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court

can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"— for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

### III. Discussion

#### A. Second or successive challenges

To the extent Petitioner challenges: (1) his convictions from either of his 1990 criminal proceedings; (2) Michigan Parole Board actions that have been considered in earlier petitions, or (3) disciplinary proceeding decisions that have been considered in earlier petitions, as detailed above, those challenges are second and/or successive. A successive petition raises grounds identical to those raised and rejected in a prior petition. *Kuhlmann v. Wilson*, 477 U.S. 436, 444 n.6 (1986) (plurality) (citing *Sanders v. United States*, 373 U.S. 1, 15–17 (1963)); *Lonberger v. Marshall*, 808 F.2d 1169, 1173 (6th Cir. 1987). A second petition is one which alleges new and different grounds for relief after a first petition was denied. *McCleskey v. Zant*, 499 U.S. 467, 470 (1991); *see also Burger v. Zant*, 984 F.2d 1129, 1132–33 (11th Cir. 1993) (distinguishing second petitions and successive petitions).

A prior dismissal with prejudice has a preclusive effect under § 2244, though a prior dismissal without prejudice does not. *See Stewart v. Martinez-Villareal*, 523 U.S. 637, 643–46 (1998). Both dismissals on the merits and certain types of decisions reached before a merits determination are dismissals with prejudice that have a preclusive effect. *Carlson v. Pitcher*, 137 F.3d 416, 419 (6th Cir. 1997) (citing *Benton v. Washington*, 106 F.3d 162, 164 (7th Cir. 1996)).

For example, a dismissal with prejudice based on procedural default is "on the merits" and, thus, a subsequent habeas application would be second or successive. *In re Cook*, 215 F.3d 606, 608 (6th Cir. 2000). Similarly, a dismissal on the basis of the statute of limitations is a decision on the merits, rendering a subsequent application second or successive. *See Murray v. Greiner*, 394 F.3d 78, 81 (2d Cir. 2005) ("We hold that dismissal of a § 2254 petition for failure to comply with the one-year statute of limitations constitutes an adjudication on the merits that renders future petitions under § 2254 challenging the same conviction 'second or successive' petitions under § 2244(b)."). Petitioner's previous habeas challenges to his 1990 criminal convictions, parole decisions before the one he identifies in 2021, and prison disciplinary proceedings before the ones he identifies in 2021 were dismissed on the merits; thus, with respect to all of those judgments or decisions, the instant petition is second or successive.

Before a second or successive application may be filed in the district court, the applicant must move in the court of appeals for an order authorizing the district court to consider the application. 28 U.S.C. § 2244(b)(3)(A); *see also Tyler v. Cain*, 533 U.S. 656, 661 n.3 (2001) (circuit court may authorize the petition upon a *prima facie* showing that the claim satisfies § 2244(b)(2); to survive dismissal in the district court, the application must actually show the statutory standard). Petitioner did not seek the approval of the Sixth Circuit Court of Appeals before filing this petition. And with respect to some of his challenges, Petitioner has previously sought permission to raise them and permission was denied.

One possible disposition of a second or successive petition is a transfer of the case to the Sixth Circuit Court of Appeals pursuant to 28 U.S.C. § 1631. *In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997). Section 1631, however, is the appropriate remedy when there is a complete want of jurisdiction. That is not the case here. Petitioner attacks several judgments and decisions in his

8

petition,[1] the fact that some of the judgments and decisions have been attacked before renders some part of the petition second or successive, but Petitioner's attacks on the prison disciplinary proceedings held this year, the Parole Board decision this year, and his placement in the START Program are not second and successive. No matter how questionable the merits of those attacks might be, the Court has jurisdiction to decide them. Because there is not a "want of jurisdiction" with regard to those claims, the Court concludes that transfer under § 1631 per *Sims* is not warranted.

Moreover, even if § 1631 were applicable to actions where jurisdiction is only lacking in part, the statute also requires that the transfer be "in the interest of justice." 28 U.S.C. § 1631. Petitioner has already asked the Sixth Circuit for permission to re-raise his challenges to his 1990 conviction(s). He raises nothing new in this action. To permit Petitioner to present serial requests for the same relief would not be in the interest of justice.

Accordingly, because the Court lacks jurisdiction over Petitioner's second or successive challenges to his convictions, old Parole Board decisions, and old disciplinary proceeding results, the Court will dismiss those challenges without prejudice. If Petitioner insists on pursuing them, he must file a motion for leave to file a second or successive petition(s) in the Sixth Circuit.

**B.     Challenges that are not second or successive**

Petitioner also raises habeas challenges to some state decisions that he has not challenged before: the Parole Board's recent denial of parole or a parole hearing; recent prison

---

[1] Petitioner's joinder of his various attacks in one petition may well be a separate and distinct procedural flaw, but it does not operate to deprive the Court of jurisdiction.

disciplinary proceeding results; and his placement in the START Program. Those challenges are properly dismissed on the merits.[2]

### 1. Parole Board decision

Petitioner reports that the Michigan Parole Board "just acted on May 5, 2021." (Pet., ECF No. 1, PageID.13.) It is not clear whether the board denied parole or a parole hearing; but Petitioner contends the action violated his rights, presumably his due process rights.[3]

Petitioner's claim fails because there is no due process right to parole or a particular parole process in Michigan. Plaintiff claims that the Michigan Parole Board violated his due process rights. To establish a procedural due process violation, a plaintiff must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006). Plaintiff fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally

---

[2] These decisions are so recent that it is extremely unlikely that Petitioner has exhausted his state court remedies with respect to them. That failure to exhaust precludes granting habeas relief. 28 U.S.C. § 2254(b)(1). But it does not preclude the Court from denying relief. 28 U.S.C. § 2254(b)(2).

[3] The argument at the base of Petitioner's attack is cryptic: "there exist[s] no record of someone entering a courthouse asserting a constitutional loss or injury/entry." (Pet., ECF No. 1, PageID.14.) The argument is expanded upon in Petitioner's supporting materials. The expansion, however, is no more illuminating. It may well be that Petitioner's attack on the denial of parole is simply an extension of his attack on his convictions, i.e., the Michigan Parole Board does not have jurisdiction over Petitioner because his convictions are invalid. If that is the case, the argument fails because he has already lost on that issue here and in the Sixth Circuit Court of Appeals. To the extent his cryptic argument is intended to raise something new and specific to the parole process, however, the claim also fails for the reasons stated below.

protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164–65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. The Sixth Circuit reiterated the continuing validity of *Sweeton* in *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011). In *Crump*, the court held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole. *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge. *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010). Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603–04 (Mich. 1999).

Under this authority, Petitioner has no reasonable expectation of liberty; he is sentenced to life imprisonment. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. The Michigan Parole Board's failure or refusal to consider Petitioner for parole, therefore, implicates no federal right. In the absence of a liberty interest, Petitioner's procedural due process claim is deficient on the face of the petition. Accordingly, Petitioner is not entitled to habeas relief.

  **2.  Disciplinary proceeding challenges**

Petitioner's challenges to disciplinary proceedings fare no better. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal

11

procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[4] for prisoners convicted for crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. 481 F.3d at 440; *see also Nali v. Ekman*, 355 F. App'x 909, 912 (6th Cir. 2009). In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461–62 (6th Cir. 2008).

---

[4] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. Mich. Comp. Laws § 800.33(5).

The sentences that Petitioner is presently serving were imposed for crimes occurring after April 1, 1987. Therefore, Petitioner might be earning disciplinary credits; but he is not earning "good time."[5] Petitioner is in the unusual situation where his subsequent and consecutive indeterminate sentence is for a crime committed before April 1, 1987. Therefore, when he begins serving that sentence, he will be eligible to earn "good time." Mich. Comp. Laws § 800.33. But, until then, MDOC disciplinary proceedings will not impact the duration of Petitioner's sentence and, therefore, do not implicate the protections of due process as described in *Wolff*.[6] Therefore, Petitioner is not entitled to habeas relief for procedural problems with his prison disciplinary proceedings.

3.  **Start Program**

Petitioner challenges his placement in the Start Program. According to MDOC Director's Office Memorandum (DOM) 2021-17:

> The Department is in the process of piloting general population Start Units as an alternative placement for eligible prisoners who would otherwise be classified to administrative segregation. The units provide a structured environment where prisoners move through progressive levels as the prisoner demonstrates positive behavior and program participation with the goal of reintegrating them back into a traditional general population setting. . . .
>
> The targeted prisoner population groups for placement in a Start Unit are:
>
> > Prisoners who have been diagnosed with serious mental illness, as defined by Mental Health Services policy, procedure and protocol, whose

---

[5] Moreover, it is difficult to see how good time credits might impact a life sentence. Parole eligibility is not determined by completing a minimum sentence, as is the case for prisoners serving an indeterminate sentence. Instead, it is determined by passage of 10 or perhaps 15 years. Mich. Comp. Laws § 791.234. Those milestones appear to be unaffected by good time or disciplinary credits.

[6] Prisoners might also be entitled to due process protections if the disciplinary proceedings result in punishment that imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 486–87 (1995). But those consequences do not relate to the fact or duration of custody and, therefore, are not cognizable on habeas review. *See* § 3 below.

>disruptive behavior would warrant reclassification to administrative segregation.
>
>Prisoners who refuse to return to a traditional general population setting that has resulted in extended administrative segregation placement.
>
>Prisoners who have a history of repeated disruptive behavior, who would otherwise be classified to administrative segregation for new negative behavior.
>
>Other prisoners who would benefit from placement in the Start Unit based on their disruptive behavior, as approved by the CFA Deputy Director or designee. This may include prisoners who are within one year of their discharge date or who have received positive parole action.
>
> Each prisoner accepted for placement in a Start Unit will be provided intake processing, during which time the prisoner's behavioral history and program needs will be reviewed to develop the prisoner's individualized Start Plan. The Start Plan shall clearly define behavioral benchmarks for increased privileges and programs for the prisoner while housed in a Start Unit.
>
> After intake processing, there are four stages through which prisoners may progress while in a Start Unit. Stage 0 is the most restrictive and Stage 3 is the least restrictive. A prisoner's progression within a Start Unit will be based on the individual prisoner's behavior at each stage and subject to recommendations made by the housing unit team and Security Classification Committee (SCC).

MDOC DOM 2021-17 (effective Jan. 1, 2021).

Even if Petitioner's placement in the Start Program violates his constitutional rights in some way, the violation is not remediable through a habeas petition. "Conditions of confinement claims seeking relief in the form of improvement of prison conditions or transfer to another facility are not properly brought under [the habeas statute]." *Wilson v. Williams*, 961 F.3d 829, 838 (6th Cir. 2020). There are circumstances, however, where a "conditions of confinement" claim might properly be raised by way of a habeas petition: where "there are no conditions of confinement sufficient to prevent irreparable constitutional injury . . . ." *Id*. Then, release is the only appropriate remedy and "release from confinement . . . is 'the heart of habeas corpus.'" *Id*., quoting *Preiser v. Rodriguez*, 411 U.S. 475, 498 (1973).

14

Petitioner does not even suggest that release is the only possible remedy for whatever wrong Respondents have committed by placing him in the Start Program. When mentioning the Start Program, he only claims that he is "unjustly placed in a mental ward . . . ." (Pet., ECF No. 1, PageID.13.) His allegations reveal the proper remedy: "a more suitable program for appropriate placement." (*Id.*, PageID.25.) He demands that he be "removed from 'The Start Program/Mental Ward.'" (*Id.*, PageID.28.) Petitioner's claims regarding the Start Program are straightforward "conditions of confinement" claims and are not cognizable on habeas review.

## IV. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

15

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, for the same reasons the Court concludes that Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court also concludes that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **Conclusion**

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated:  October 15, 2021          /s/ *Maarten Vermaat*
                                                                               Maarten Vermaat
                                                                               United States Magistrate Judge